# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| ALEGION, INC., | ) |
|     Debtor-Defendant-Appellant, | ) ) ) |
| v. | ) CASE NO. 2:19-cv-00218-ALB ) |
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, | ) ) ) ) ) |
|     Creditor-Plaintiff-Appellee. | ) |

## MEMORANDUM OPINION

This matter comes to the Court on appeal from the Bankruptcy Court's order overruling Appellant Alegion, Inc.'s ("Alegion") objection to Appellee Central States, Southeast and Southwest Areas Pension Fund's ("the Fund") proof of claim. Having reviewed the record, the parties' briefs, and applicable law, and with the benefit of oral argument, this Court affirms.

### Background

The Fund is a multiemployer pension plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Alegion is a construction company that participated in the Fund. While it participated, Alegion was bound by a collective bargaining agreement to contribute to the Fund on behalf of its employees. Alegion stopped participating in the fund in 2011.

In 2017, the Fund assessed Alegion a "withdrawal liability" in the amount of approximately $390,000. Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), an employer that "withdraws from a multiemployer plan in a complete withdrawal . . . is liable to the plan" for "the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits" with some adjustments. 29 U.S.C. § 1381. ERISA provides that, for most employers, a "complete withdrawal" occurs "when an employer—(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). But ERISA provides a separate definition of "complete withdrawal" for employers in the building and construction industry:

> (1) Notwithstanding subsection (a), in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2), if—
>
> (A) substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and
> (B) the plan--
>   (i) primarily covers employees in the building and construction industry, or
>   (ii) is amended to provide that this subsection applies to employers described in this paragraph.
>
> (2) A withdrawal occurs under this paragraph if--
>   (A) an employer ceases to have an obligation to contribute under the plan, and
>   (B) the employer--

2

> (i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or
> (ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

29 U.S.C. § 1383(b).

Also in 2017, the Fund sent Alegion a notice and demand for payment of the withdrawal liability under 29 U.S.C. § 1382(2) and 1399(b)(1). ERISA, as amended by the MPPAA, provides that disputes about withdrawal liability must be submitted to arbitration:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of-- (A) the date of notification to the employer under section 1399(b)(2)(B) of this title, or (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

29 U.S.C. 1401(a)(1). If an employer does not dispute the withdrawal liability in arbitration, the statute provides that the employer must pay the amount demanded by the plan sponsor:

> If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(b)(1). Although Alegion did not pay the withdrawal demand, Alegion also did not contest the demand in arbitration proceedings.

After the Fund sued Alegion for the withdrawal liability, Alegion filed bankruptcy in 2018. The Fund filed a proof of claim in the bankruptcy, Alegion objected to the claim, and the Fund filed a response, arguing that Alegion's objection should be overruled because it did not dispute the withdrawal liability in arbitration. In August 2018, the Bankruptcy Court held a hearing on the objection, entered a scheduling order for the parties to conduct discovery, and set an evidentiary hearing for early 2019. In September, Alegion filed a "Notice of Defense," in which it argued that it had no withdrawal liability because of the exemption for employers in the building and construction industry.

Three things happened in relatively quick succession that November. On November 7, in a filing titled "Motion to Bifurcate," the Fund argued that, before allowing discovery and holding an evidentiary hearing, the Bankruptcy Court should rule on the legal issue of whether Alegion could contest the withdrawal liability in light of its admitted failure to arbitrate. On November 27, 2018, the Bankruptcy Court held a hearing on the Motion to Bifurcate. On November 28, 2018, Alegion filed a "Brief in Response to Creditor's Motion to Bifurcate," arguing that its failure to arbitrate was not fatal to its objection and that the construction exemption could still apply. The next day, on November 29, 2018, the Bankruptcy Court entered an order stating that the Fund's arbitration argument "may have merit" and staying all discovery until "the Court rules on this narrow legal issue."

In March, the Bankruptcy Court gave the parties notice of a hearing "to consider and act upon" the Motion to Bifurcate. Both parties appeared at the hearing. The Bankruptcy Court explained that it had reviewed the parties' briefs and conducted additional research on the arbitration issue, and it orally overruled Alegion's objection because of the failure to arbitrate. The Bankruptcy Court explained that its ruling would "moot out any bifurcation" because the Fund's claim "would be allowed as filed." Alegion's counsel did not contest the ruling, ask for the opportunity to file additional briefs, or otherwise register an objection. The Bankruptcy Court later entered a written order that adopted its oral statements at the hearing and overruled Alegion's objection.

This appeal followed.

**Jurisdiction**

The Court has jurisdiction over this appeal under 28 U.S.C. § 158. Because it resolved the entire dispute between Alegion and the Fund, the Bankruptcy Court's order overruling Alegion's objection to the Fund's claim is a final, appealable order. *See Howard Delivery Service, Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006) ("Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case . . . ."); *In re PMF Enterprises, Inc.*, 653 F. App'x 903, 904 n.1 (11th Cir. 2016)(exercising appellate jurisdiction over bankruptcy order overruling objection).

5

**Standard of Review**

Although a district court generally reviews a bankruptcy court's decision to allow a claim for an abuse of discretion, *Carnegia v. Georgia Higher Educ. Assistance Corp.*, 691 F.2d 482, 483 (11th Cir. 1982), this appeal raises legal issues that are reviewed de novo, *see Educ. Credit Mgmt. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007).

**Discussion**

Alegion argues that the Bankruptcy Court erred in two ways. First, Alegion argues that the Bankruptcy Court violated Alegion's due process rights by overruling its objection to the Fund's claim at a hearing that was ostensibly set to address the Motion to Bifurcate. Second, Alegion argues that the Bankruptcy Court was wrong to conclude that its objection was precluded by its failure to contest the withdrawal liability in arbitration. Neither argument is persuasive.

**A. Alegion's due process argument fails.**

Alegion's due process argument fails for at least three reasons.

First, Alegion waived its due process argument by failing to raise it in the Bankruptcy Court. *See Telfair v. First Union Mortg. Corp.,* 216 F.3d 1333, 1337 n.6 (11th Cir. 2000) (holding arguments not timely raised in the bankruptcy court are waived on appeal); *Matter of Fairchild Aircraft Corp.,* 6 F.3d 1119, 1128 (5th Cir. 1993) (affirming district court holding that Appellant waived appeal on the

application of the part performance doctrine by failing to properly present the argument to the bankruptcy court). Alegion could have objected at the hearing, could have asked for more time or for additional briefing on the issue, and could have filed a motion to reconsider under Federal Rule of Bankruptcy Procedure 3008. Alegion did none of those things.

Second, even if the issue had not been waived, the Bankruptcy Court did not violate Alegion's due process rights. Alegion had notice and an opportunity to be heard on the legal issue that the Bankruptcy Court decided at the March hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (describing notice and opportunity to be heard as "essence of due process"). The Bankruptcy Court held multiple hearings on Alegion's objection to the notice of claim. After one of those hearings, the Bankruptcy Court entered an order that told the parties it intended to rule on the arbitration issue. Alegion filed a brief on the arbitration issue, which presents the same arguments in the same language as the brief it has filed before this Court. The Bankruptcy Court also allowed several months between the November notice that it intended to rule on the arbitration issue and its March ruling. Although the Bankruptcy Court could have explained more clearly what it intended when it gave the parties notice of the March hearing, the Bankruptcy Court did not violate due process by ruling on Alegion's objection at the hearing.

Third, any error in the Bankruptcy Court's procedures was harmless. *See Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad.*, 551 U.S. 291, 303 (2007) ("[W]e can safely conclude that any due process violation was harmless . . . ."). At oral argument, Alegion's counsel could not identify anything specific that Alegion would have done differently if the Bankruptcy Court's notice of the March hearing had been clearer. And, as explained below, the Bankruptcy Court's merits ruling was correct.

**B. Alegion cannot contest its withdrawal liability.**

Alegion's argument on the merits also fails. The original version of ERISA imposed no withdrawal liability on a contributor to a multiemployer plan except if the plan terminated completely. This setup gave employers an incentive to withdraw from financially weak multiemployer plans to avoid liability if the plan terminated in the future. Congress fixed this problem in the MPPAA by imposing a mandatory liability on all withdrawing employers. "The basic concept of the [MPPAA] is that each employer, in addition to the contributions to the plan pursuant to collective bargaining agreements, owes a share of the unfunded vested liability of the plan to its beneficiaries." *Connors v. Ryan's Coal Co.*, 923 F.2d 1461, 1462–63 (11th Cir. 1991).

ERISA, as modified by the MPPAA, establishes strict time frames for demanding arbitration for disputes about withdrawal liability. 29 U.S.C. §

8

1401(a)(1)(A)-(B). The employer's failure to submit its dispute to arbitration results in a waiver of any defenses to the imposition of withdrawal liability. 29 U.S.C. § 1401(b)(1). The Eleventh Circuit has explained that these expedited arbitration provisions are one of the MPPAA's most important innovations:

> At the heart of the MPPAA's regime are provisions for informal, expeditious resolution of withdrawal liability disputes . . . Upon withdrawal the trustees of the multiemployer fund must promptly determine the amount of liability pursuant to a statutory formula, formulate a payment schedule, and notify the employer of the resulting assessment and schedule Within 90 days of the notification the employer may request that the sponsor review its determination. If either party is dissatisfied with the outcome of the review, the MPPAA mandates arbitration proceedings. After arbitration, or if no arbitration proceeding has been initiated, either party may bring an action in federal district court "to enforce, vacate, or modify the arbitrator's award. The employer is required to make interim payments to the fund until the dispute is resolved by the arbitrator or through judicial review.

*Connors*, 923 F.2d at 1462–63.

Alegion argues that disputes about the building and construction industry exception in Section 1383(b) are outside of this arbitration requirement. But that argument cannot be squared with the statute's text. Section 1401(a)(1) of the statute provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. 1401(a)(1). The statute says "any dispute," not some disputes. *See Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) ("Any disputes means all disputes,

because 'any means all.'"). And the statute expressly identifies the specific code section that Alegion relies on to dispute its withdrawal liability—Section 1383—as a Code section about which disputes must be submitted to arbitration. Because the Fund is a plan sponsor that determined withdrawal liability under 29 U.S.C. § 1381 and Alegion is an employer that disputes its liability under 29 U.S.C. § 1383, the plain meaning of this statute encompasses the dispute at issue.

On top of the statute's unequivocal text, it is also worth noting that no other authority supports Alegion's argument. Instead, all the district courts that have addressed the subject have held that the mandatory arbitration requirement applies to disputes about the building and construction exception. *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 854, 874–75 (E.D. Mich. 2010) (agreeing with other courts that the building and construction exception is subject to mandatory arbitration); *Einhorn v. DiMedio Lime Co.*, No. 13-3634, 2014 WL 5816695, at *5 (D.N.J. Nov. 10, 2014) (holding that employer could not litigate building and construction exception because employer did not arbitrate); *Trustees of Laborers' Local 310 Pension Fund v. Able Contracting Grp., Inc.*, No. 1:06-cv-1925, 2007 WL 2238361, at *7 (N.D. Ohio Aug. 1, 2007) (same); *Trustees of Utah Carpenters' & Cement Masons' Pension Trust v. New Star/Culp LC*, No. 2:07-cv-699, 2009 WL 321573, at *5 (D. Utah Feb. 9, 2009) (same).

"The language of our laws is the law." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1227 (11th Cir. 2001). And the language at issue here says that Alegion's dispute must be submitted to arbitration. There is no dispute that Alegion failed to initiate arbitration as required by the statute, and for that reason, the Bankruptcy Court was correct to allow the Fund's claim.[1]

**Conclusion**

The Bankruptcy Court's judgment is **AFFIRMED**.


**DONE** and **ORDERED** this 30th day of August 2019.


       /s/ Andrew L. Brasher
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE

---

[1] In a footnote in its initial brief, Alegion suggests that the time for it to request arbitration could be equitably tolled. Despite months to do so, Alegion never asked the Bankruptcy Court to send its objection to arbitration. And this issue was not sufficiently raised in this Court. *See Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (stating argument raised in footnote waived); *Turner v. United Parcel Serv.*, No. 2:13-cv-823, 2014 WL 4458917, at *9 n.8 (N.D. Ala. Sept. 10, 2014) (same). Nothing in this opinion should be read to preclude Alegion from asking the Bankruptcy Court to toll the time to request arbitration under the statute.